## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MICHAEL KING,

      Petitioner,

v.                                                              Case No. 3:19-cv-917-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.  **Status**

Petitioner, Michael King, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He challenges a state court (Flagler County, Florida) judgment of conviction for use of a computer to seduce, solicit, or lure a child and traveling to meet a minor for sex.[1] Petitioner is serving a cumulative ten-year term of incarceration to be followed by a cumulative ten-year term of sex offender probation. Respondents filed a

---

[1] A jury found Petitioner guilty of two counts of use of a computer to seduce, solicit, or lure a child, but the trial court vacated one of those counts during his state court postconviction proceedings, finding the conviction violated Petitioner's double jeopardy rights.

Response. See Doc. 14 (Resp.).[2] Petitioner then supplemented his Petition,[3] see

Docs. 16, 16-1; and he replied, see Doc. 21. This case is ripe for review.[4]

## II.   **Governing Legal Principles**

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

governs a state prisoner's federal habeas corpus petition. See Ledford v.

Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir.

2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure

that federal habeas relief functions as a guard against extreme malfunctions in

---

[2] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

[3] After Respondents responded, Petitioner filed a "Motion for Leave to Expand the Record" to include the Florida Supreme Court's order disbarring Petitioner's trial counsel, Bret Hartley, and an uncontested "report of the referee" recommending disbarment. See Docs. 16, 16-1. Petitioner filed the documents to supplement his ineffective assistance of counsel claims. Id. The Court granted Petitioner's request to the extent it would consider the supplement if relevant. Doc. 17. The Court addresses the supplement when analyzing Grounds Two and Three of the Petition.

[4] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

the state criminal justice systems, and not as a means of error correction.'" Id.
(quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court
decision, if any, that adjudicated the petitioner's claims on the merits. See
Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The
state court need not issue an opinion explaining its rationale for the state court's
decision to qualify as an adjudication on the merits. See Harrington v. Richter,
562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is
unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that
> does provide a relevant rationale. It should then
> presume that the unexplained decision adopted the
> same reasoning. But the State may rebut the
> presumption by showing that the unexplained
> affirmance relied or most likely did rely on different
> grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a
federal court cannot grant habeas relief unless the state court's adjudication of
the claim was "contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the United
States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective

assistance of counsel. That right is denied when a defense counsel's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold."

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. Analysis

### A. Ground One

Petitioner alleges the trial court violated his Sixth Amendment confrontation rights under Crawford v. Washington, 541 U.S. 36 (2004), when

it considered deposition transcripts rather than live testimony during Petitioner's pretrial <u>Williams</u>[5] Rule hearing. Doc. 1 at 4-5.

Before trial, the state filed a notice of <u>Williams</u> Rule or collateral crime evidence, advising Petitioner and the trial court of its intent to introduce at trial evidence of internet communications between Petitioner and two other minor females who were not the victim. Resp. Ex. A at 41-42. Trial counsel objected to the state's notice, and the trial court conducted a hearing on the issue. Resp. Ex. C. During the hearing, the state declined to present live testimony and instead asked that the trial court make its admissibility determination by considering deposition testimony of the victim and the two potential <u>Williams</u> Rule witnesses. <u>Id.</u> at 6. In support of its request, the state argued that Petitioner contacted the victim and the two other minors through Facebook; presented printouts of the Facebook messages between Petitioner and the three females; and maintained the <u>Williams</u> Rule witnesses' testimony were relevant to show Petitioner's motive, absence of mistake, preparation, intent, and knowledge of the minor victim's age. <u>Id.</u> at 10-23. Trial counsel objected, arguing, inter alia, that the state's reliance on deposition testimony at the pretrial hearing violated Petitioner's confrontation rights under <u>Crawford</u>, because the state filed the <u>Williams</u> Rule notice after the depositions were taken

---

[5] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

and thus trial counsel was unaware of this information when he cross-examined the witnesses during their depositions. Id. at 24-27. The trial court overruled trial counsel's objection, finding Crawford and the Confrontation Clause only applied to trial testimony, not preliminary or pretrial hearings, and found the similar fact evidence was relevant and admissible at trial. Id. at 33-34; Resp. Ex. A at 54-61.

The victim and the two Williams Rule witnesses then testified at trial, and trial counsel cross-examined each witness. Resp. Ex. E at 39-62, 115-35, 254-61. Before each Williams Rule witness testified, the trial court instructed the jury that each witness's testimony should be considered only as it related to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or corroboration. Id. at 115, 256. The jury found Petitioner guilty, and on direct appeal, Petitioner, with help from appellate counsel, raised as his only issue a claim that the trial court violated his Sixth Amendment confrontation rights by determining the admission of Williams Rule evidence solely on deposition testimony. Resp. Ex. G. The state filed an answer brief addressing the claim on the merits. Resp. Ex. H. It argued the trial court properly held that the Confrontation Clause of the Sixth Amendment was inapplicable to the pretrial Williams Rule hearing, and even if the Williams Rule testimony was improperly admitted at trial, any error was harmless given the other evidence presented to the jury. Id. The Fifth District Court of Appeal

per curiam affirmed Petitioner's judgment and convictions without a written opinion. Resp. Ex. J.

Here, the Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. "The Confrontation Clause protects a defendant's trial right to confront testimony offered against him to establish his guilt, and the Supreme Court has never extended the reach of the Confrontation Clause beyond the confines of a trial." United States v. Campbell, 743 F.3d 802, 808 (11th Cir. 2014). Notably, the Eleventh Circuit "and other courts have declined to extend the right to confront witnesses to pre- and post-trial proceedings that do not concern the adjudication of a defendant's guilt or innocence." Id. (citing United States v. Powell, 650 F.3d 388, 392-93 (4th Cir. 2011) (holding that the Confrontation Clause does not apply at sentencing and noting that all other federal circuit courts that hear criminal appeals agree); United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005) (holding that, even after Crawford, the confrontation right does not apply at a non-capital sentencing hearing); United States v. Andrus, 775 F.2d 825, 836 (7th Cir. 1985) (holding that the Sixth Amendment does not provide a confrontation right at a preliminary hearing); LaChappelle v. Moran, 699 F.2d 560, 564-65 (1st Cir. 1983) (holding that the confrontation right does not apply at an in camera conference to determine the reason a witness refuses to answer a question because such a judicial proceeding "is not a stage of the trial at which

an accused must be present"); <u>United States v. Harris</u>, 458 F.2d 670, 677-78 (5th Cir. 1972), (holding that the confrontation right does not apply at a preliminary hearing); <u>cf</u> <u>United States v. Clark</u>, 475 F.2d 240, 247 (2d Cir. 1973) (holding confrontation right applies to pretrial suppression hearing because "the suppression hearing centers upon the validity of the search for and seizure of evidence which the government plans to use later in seeking to prove guilt")).

In Petitioner's case, the trial court considered the depositions during a pretrial <u>Williams</u> Rule hearing to determine the admissibility of evidence that did not go directly to Petitioner's guilt, and thus Petitioner's Sixth Amendment confrontation rights were not implicated. But even if the trial court found the <u>Williams</u> Rule evidence inadmissible under the Sixth Amendment Confrontation Clause, Petitioner cannot show that the outcome of his trial would have been different. The victim and police witnesses testified that Petitioner repeatedly contacted the victim through Facebook and traveled to meet the minor victim in a location for the purpose of committing unlawful sexual conduct. Resp. Ex. E at 42-56, 77-88. Consequently, the Court finds that the state appellate court's summary adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state appellate court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground One is denied.

**B. Grounds Two and Three**[6]

In Ground Two, Petitioner asserts his trial counsel was ineffective for failing to timely advise him of the state's plea offer of a 36-month term of incarceration and for completely failing to inform Petitioner of the state's plea offer of a 49-month term of incarceration. Doc. 1 at 6-7. Petitioner contends he tried to accept the 36-month plea offer, but trial counsel misadvised Petitioner about when the state would revoke the offer; and Petitioner maintains trial counsel never told him about the state's 49-month offer. Id. In Ground Three, Petitioner asserts his trial counsel was ineffective for failing to inform Petitioner that he faced a maximum 25-year term of incarceration if he proceeded to trial and was found guilty on all three charged offenses. Id. at 8-9. He contends that his attorney instead "conveyed his belief that [] Petitioner could get seven years at the August 13, 2015 docket sounding."[7] Id. at 9.

Petitioner raised these allegations in ground one of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. L at 12-18. After ordering the state to respond, id. at 53-57, the trial court summarily denied the allegations, id. at 246-51. The trial court found as follows:

---

[6] Petitioner raised these two claims in the same ground in state court, and thus the Court addresses these claims together.

[7] In his Reply, Petitioner argues that trial counsel's subsequent disbarment supports his allegations that trial counsel misrepresented the state's plea offers. See Doc. 21. The Court addresses that allegation separately.

In Claim One, Defendant argues two distinct claims of ineffective assistance of counsel: (1) that he was not properly advised of the State's two plea offers; and (2) that he was not advised of the maximum sentence of 25 years in prison which he faced at the time of the plea offers. Defendant claims that had he been advised properly, he would have accepted the State's second plea offer of 49 months in prison and would not have proceeded to trial.

The State argues that the record clearly refutes Defendant's claim that its offers were not properly conveyed. The first offer of three years in prison followed by 12 years[] sex offender probation was explicitly rejected at the docket sounding on August 13, 2015:

> MR. PRIBISCO: Your Honor, the plea offer was three years in prison followed by 12 years of sex offender probation. He is charged with three counts. I believe the latest negotiations were that he would plea to one count. And that would be the -- the resolution. I did discuss that with Mr. Hartley prior to court here today and it appears that Mr. King's not in a position to accept that offer.

> THE COURT: Okay. Mr. Hartley?

> MR. HARTLEY: . . . You know, it's our position that -- that while I respect the State's made that offer, criminal proportionality standpoint, it's way out of proportion to the facts of the case.

> So, I mean, if there was a way to resolve this to -- to a probationary sentence that takes into account, we'd be more than willing to do that. But we have been at

opposite ends of the spectrum . . . . [T]his is where we're at, I guess.

THE COURT: Well, I just have to make sure that your client's heard the offer.

MR. HARTLEY: Sure.

THE COURT: That he's intelligently decided to not accept it with your advice and that's what I'm --

MR. HARTLEY: Yeah.

THE COURT: That's why I need him here today.

MR. HARTLEY: Yep.

THE COURT: I hope he understands that.

MR. HARTLEY: Yep.

The second offer by the State included a 49-month prison sentence, which was rejected prior to the commencement of trial on August 17, 2015:

MR. PRIBISCO: . . . Previously when we were on the record discussing the history of the plea negotiations, and just stated -- just something that Mr. Hartley said just caught me here and I wanted to make sure it was clear on the record.

But the offer that was relayed on Friday was essentially that the State would nolle pros one count, and that he would face a scoresheet with -- the lowest permissible prison sentence would be about 49 months. And that's not that it's a mandatory minimum, there would still be the ability to

argue for a downward departure. I'm sure -- or I'm thinking Mr. Hartley probably explained that to him. I just wanted to make sure that that was clear on the record and that Mr. King was advised that this is not a -- it was not a mandatory minimum, but rather the lowest permissible sentence, for which he could certainly argue for a downward departure.

THE COURT: That was the substance of your plea offer?

MR. PRIBISCO: That's correct, Judge.

THE COURT: Okay. Mr. Hartley?

MR. HARTLEY: Your Honor, I mean, the reality is that this case is a resolvable case. I just feel like we're always, you know, just a bit apart. And so, you know, my client said to me in the hallway, you know, he's willing to resolve the case short of trial, we just seem to be slightly -- you know, slightly off . . . .

THE COURT: . . . I just wanted to ensure that the State has now put on the record your last plea offer, and that's been not agreed to, so we'll proceed.

MR. HARTLEY: Well, I mean, is that -- is that open?

MR. PRJBISCO: It's -- it's not. I mean, that's just to confirm what the offer was and that it was rejected.

MR. HARTLEY: You wouldn't -- you would not -- you would not re-extend at this point?

14

MR. PRIBISCO: Huh-uh. No, that's correct.

The record clearly demonstrates that counsel conveyed both plea offers and Defendant chose to reject them both and take his chances at trial. Defendant was present at both hearings and could have informed the Court if he had intended to accept either offer, but he did not do so.

Next, Defendant claims that his trial counsel was ineffective when he failed to advise Defendant of the maximum penalty he faced of 25 years in prison. In this context, Defendant can establish <u>Strickland</u> prejudice if he can demonstrate a reasonable probability that (1) he would have accepted the plea offer had counsel advised him correctly; (2) the prosecutor would not have withdrawn the offer; (3) the court would have accepted the offer; and (4) the conviction or sentence under the plea offer would have been less severe than under the judgment and sentence that in fact were imposed. <u>See</u> <u>Alcorn v. State</u>, 121 So.3d 419, 422 (Fla. 2013); <u>Missouri v. Frye</u>, 566 U.S. 134, 148-9 (2012).

Defendant contends that had he known that he faced a maximum sentence of 25 years in prison, he would have accepted the State's second plea offer which included 49 months in prison. This Court is not required to accept Defendant's claim, but must consider the totality of the evidence as viewed at the time of the plea offers. <u>Alcorn</u>, 121 So. 3d at 431, 432. The record clearly demonstrates that Defendant was dissatisfied with the State's two plea offers, and felt they were "at opposite ends of the spectrum." This Court is further persuaded by the State's argument that since Defendant had already rejected the State's first offer of a three-year prison sentence, it defies logic that he would then almost immediately accept an offer that included a higher prison term. Finally, the record clearly demonstrates that after Defendant rejected it,

> the State was not willing to re-extend the second plea
> offer.
>
>   Defendant has failed to establish prejudice under
>   Strickland and A[l]corn. Thus, it is not necessary to
>   determine whether or not trial counsel's performance
>   was deficient.

Resp. Ex. L at 248-51 (record citations omitted). Petitioner appealed, and the

Fifth DCA per curiam affirmed the trial court's summary denial without a

written opinion. Resp. Ex. P. The Court addresses these claims in accordance

with the deferential standard for federal court review of state court

adjudications.

In doing so, the Court defers to the state court's conclusion that Petitioner

has failed to show prejudice under Strickland. In the context of a rejected plea

offer, the prejudice prong requires the movant to show "a reasonable probability

that but for counsel's ineffectiveness: (1) 'the plea offer would have been

presented to the court (i.e., that the defendant would have accepted the plea

and the prosecution would not have withdrawn it in light of intervening

circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the

conviction or sentence, or both, under the offer's terms would have been less

severe than under the judgment and sentence that in fact were imposed.'" Osley

v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting Lafler v. Cooper,

566 U.S. 156, 164 (2012)). But "after the fact testimony concerning [the

movant's] desire to plead, without more, is insufficient to establish that but for

counsel's alleged advice or inaction, he would have accepted the plea offer." <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991).

Here, even if the Court assumes that trial counsel acted deficiently, Petitioner has not shown a reasonable probability that absent counsel's alleged misconduct, Petitioner would have accepted either offer and the state would not have withdrawn the offers given intervening circumstances. As to the 36-month offer, Petitioner alleges his trial counsel advised him that he had until August 14, 2015, to decide whether to accept the offer, and when he attempted to accept the offer on the morning of August 14, trial counsel advised him "the offer was only open until the [d]ocket sounding of [] [August] 13th." Doc. 1 at 7. However, the record shows that Petitioner rejected the 36-month plea offer before the August 13, 2015, pretrial conference; Petitioner was physically present when the parties advised the trial court at the August 13, 2015, hearing that Petitioner rejected that offer; and Petitioner did not interrupt when trial counsel suggested Petitioner rejected the offer because he wished to take his chances at trial and argue for the imposition of a lesser sentence if found guilty.[8] Resp. Ex. L at 64-65.

As to the alleged 49-month plea offer, the record is clear that the state did not offer a specific 49-month negotiated sentence. Rather, the terms of that offer

---

[8] The transcript of the August 13, 2015, pretrial conference states that Petitioner was present at the hearing. Resp. Ex. L at 60.

involved the state dropping one of the charges to lower Petitioner's minimum guideline exposure to 49-months, allowing trial counsel an opportunity to argue for that 49-month guideline minimum or request a downward departure sentence. The offer did not affect the trial court's ability to sentence Petitioner to the maximum sentence. On August 17, 2015, the morning of jury selection, the state advised the trial court about the offer and explained that Petitioner had rejected it. Resp. Ex. D at 5-6. Trial counsel then explained that Petitioner was willing to resolve the case with a plea but suggested that the state's offers subjected Petitioner to prison time, and thus the offers were not something Petitioner was willing to accept. Id. at 6. The trial court then advised it would not entertain such a late-stage plea agreement, and the state emphasized that it would not re-extend another offer. Id. at 6-7. Again, Petitioner was present for this exchange and did not interject.[9]

As to Petitioner's claim that trial counsel failed to correctly advise him that he faced a 25-year maximum sentence if he was found guilty at trial, the Court defers to the state court's finding that the "totality of the evidence as viewed at the time of the plea offers" shows Petitioner was unwilling to accept either offer despite any alleged misadvise about the maximum sentence. Here, Petitioner claims that during the August 13, 2015, pretrial conference, trial

_____

[9] The transcript of the August 17, 2015, discussion about the 49-month offer states that Petitioner was present in the courtroom. Resp. Ex. D at 4.

counsel "conveyed his belief that [] Petitioner could get seven years," and suggests that he understood trial counsel's statement to mean that he only faced a 7-year maximum sentence. Doc. 1 at 9. A review of the August 13, 2015, transcript shows that trial counsel's only reference to a 7-year term was when he stated, "does [Petitioner] deserve seven years in state prison" if he is found guilty. Resp. Ex. L at 64-65. However, in context, the 7-year reference was clearly a hypothetical statement trial counsel made to highlight the alleged historical sentencing disparity between individuals who are convicted of the charged offense. Id. He also made the reference to further explain that Petitioner would not accept any plea offer that included a prison sentence. Id. 64-65. Further, immediately following the jury's verdict, the trial court began Petitioner's sentencing hearing and advised Petitioner that he faced a minimum guidelines sentence of 70.05 months incarceration and a maximum sentence of 25 years. Resp. Ex. E at 401. Petitioner acknowledged that sentencing range and addressed the trial court, asking that it impose "a decent sentence" and never suggesting he was unaware of his 25-year incarceration exposure. Id. at 401-02.

Given the parties' widely divergent positions on any negotiated plea deal and sentence, Petitioner has not shown a reasonable probability that a plea agreement would have been reached and accepted by the trial court. Although Petitioner may have been interested in pleading guilty, "[g]iven [Petitioner's]

awareness of the plea offer[s], his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer[s]." Diaz, 930 F.2d at 835. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d).

### i. Supplement

Although never presented to nor considered by the state court, Petitioner, in support of these claims, filed with this Court a supplement containing a court-appointed referee's 2019 report recommending that trial counsel be disbarred and the Florida Supreme Court's 2020 order approving the report and disbarring trial counsel. See Doc. 21 at 5; Docs. 16, 16-1. Petitioner argues trial counsel's subsequent disbarment "leads credence to his claim[s]" that trial counsel failed to adequately convey the terms and consequences of these plea offers. Doc. 21 at 6-7.

While trial counsel's disciplinary proceedings and 2020 disbarment are concerning, Petitioner does not establish a connection between the violations outlined in the referee's report and trial counsel's representation of Petitioner. Trial counsel filed his notice of appearance on behalf of Petitioner on December

9, 2013. Resp. Ex. A at 24. Petitioner's trial occurred in 2015, and in 2016, Petitioner was found indigent for purposes of his direct appeal and an assistant public defender was appointed to represent him on appeal. Resp. Ex. G. There is no indication that The Florida Bar's investigation concerned conduct relating to trial counsel's handling of Petitioner's case. See generally Doc. 16-1. Trial counsel's disbarment was based on conduct that occurred between 2017 and 2019, involving, inter alia, severe misappropriation of client funds, failure to take necessary steps to protect clients' interests prior to abandoning his law office, failure to appear on behalf of clients at court hearings, and failure to respond to The Florida Bar's official inquiries. Id. While the report contains allegations that trial counsel intentionally misrepresented facts to his clients and the state courts during that time, those misrepresentations were directly associated with his effort to conceal his misappropriation of client funds. Id. at 17. As such, evidence of trial counsel's disbarment is too attenuated to bear on deficient performance or prejudice under Strickland. Grounds Two and Three are denied.

## C. Ground Four

Petitioner argues his trial counsel was ineffective for failing to challenge for cause or use a peremptory strike to remove a biased juror during jury

selection.[10] Doc. 1 at 10-11. Petitioner alleges that during voir dire, juror Johnny Dumont said he did not understand the law and agreed with another potential juror (who was ultimately stricken) that Petitioner was "automatically guilty, without the need for further evidence . . . ." Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. L at 18-23. The trial court summarily denied the claim, finding as follows:[11]

> In Claim Two, Defendant states that trial counsel was deficient for not challenging juror Dumont during jury selection. Counsel's alleged failure to exercise a cause challenge or a peremptory challenge to strike a prospective juror is subject to the prejudice standard set forth in Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007), which states that the defendant must establish that a juror was actually biased:
>
>> A juror is competent if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial – i.e., that the juror was biased against the defendant,

_____

[10] In his Petition, Petitioner alleges trial counsel should have stricken Dumont for cause, Doc. 1 at 10, and in his Reply, Petitioner alleges trial counsel should have used a peremptory challenge to strike Dumont, Doc. 21 at 10-12.

[11] The trial court denied the allegations in Ground Four of the Petition in an "Interim Order" and later denied the allegations in Grounds Two and Three of the Petition in a separate final order following the state's response. Resp. Ex. L at 31-37, 246-51. Petitioner challenged both the interim and final orders in the same appeal.

and the evidence of bias must be plain on the face of the record.

Id. at 324 (citations omitted) (quoting Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984)).

Here, in his motion, Defendant recounts the State's questioning of Dumont and the allegedly biased statements made by Dumont. A review of the record shows that at jury selection on August 17, 2015, both the State and defense counsel addressed Dumont's ability to understand the legal concepts and evidence in the case and his ability to remain impartial. After the State's questioning, defense counsel carefully and thoroughly questioned Dumont:

> MR. HARTLEY: Mr. Dumont, I think that you asked a question earlier about – about is this a To Catch a Predator case. What do you know about those?

> VENIREMAN DUMONT: Well, when you see something like that on TV, whether it's that or Cops, they seem to have, when it comes to court, you don't see that part, they already have a lot of information. Because you see what's happening. You see the video. You see the arrest. You see what they say online and you understand all this stuff.

> MR. HARTLEY: Do you think it's fair the way those things happen?

> VENIREMAN DUMONT: I'm not saying it's fair or not fair. After you see it on video and you actually see the guy going into the house, I mean, what I see from that, he's guilty.

MR. HARTLEY: Sure. So the context of the conversation, the content of the conversation and the evidence that gets presented during the trial phase, does that – that makes a difference to you, though, right, Mr. Dumont?

VENIREMAN DUMONT: Yes, it would.

MR. HARTLEY: So if –

VENIREMAN DUMONT: But if you show me a video of the actual person going in there. I see it. That's like seeing somebody stealing my car right now.

MR. HARTLEY: But you've got to see him drive off with the car though. Right?

VENIREMAN DUMONT: Yes, but if I see that, that's . . .

MR. HARTLEY: So if a police officer – so if a police officer is trying to sell you drugs on Facebook or sell a person drugs on Facebook and that person shows up to consummate a deal or something along those lines, do you think that the drugs have to change hands in order for there to be a conviction?

VENIREMAN DUMONT: Yes.

MR. HARTLEY: Okay. So if there is no exchange or if there is no physical evidence of that happening, do you think it's the contrary?

VENIREMAN DUMONT: I don't – yeah. I don't – I don't believe that that – if it didn't happen, it didn't happen.

Later, defense counsel again questioned Dumont:

MR. HARTLEY: Okay. Mr. Dumont the same thing, same thing. I mean, do you think that there's some – there has to be some manifestation of my agreement to do something? So meaning if I agree online, I'm typing this, I say, Hey. Mr. Dumont, I'll meet you at Steak and Shake and I'm going to bring an ounce of weed for you, do you think I should probably have something in my hand, probably get busted for doing that?

VENIREMAN DUMONT: I wouldn't be at Steak and Shake, first of all.

MR. HARTLEY: . . . But if I agreed – or if a person agreed to meet you somewhere, would you want to see some – some component of the case to show that the person actually – you know, not only was just talking about it, but actually was going to do it?

VENIREMAN DUMONT: Sure.

MR. HARTLEY: I mean, the To Catch a Predator cases – you've seen those on TV. Right?

VENIREMAN DUMONT: Sure. I watch Cops and this and that.

MR. HARTLEY: So when you watch it – when you watch a To Catch a Predator case, what do these fools show up with in their hand, usually?

VENIREMAN DUMONT: Well, they've got drugs and condoms, or whatever.

MR. HARTLEY: Whiskey?

VENIREMAN DUMONT: Yeah.

MR. HARTLEY: Movies?

VENIREMAN DUMONT: Yeah.

MR. HARTLEY: . . . But, Mr. Dumont, so what I'm hearing you say, though, is that you're comfortable with the idea that the State has an obligation to show more than just – more than just basic facts. They've got to show that they meet every element in the case. You're okay with that?

VENIREMAN DUMONT: Yes.

MR. HARTLEY: So, if the judge – and you were talking about not understanding, necessarily, the law. If the judge says to you here are the elements of the case pursuant to the standard jury instructions that every attorney in the state goes by, if the judge shows you every element and every element is met beyond a reasonable doubt, you're finding would be guilty. Correct?

VENIREMAN DUMONT: (No audible response).

MR. HARTLEY: And if one of those elements was not there, your finding would not be guilty. Correct?

VENIREMAN DUMONT: Yes.

Finally, defense counsel once again addressed impartiality with Dumont:

> MR. HARTLEY: . . . Just remember, you know, what I'm trying to do here is just make sure that – that I get a jury full of people that are going to hear this case on the facts and on the law and nothing else. I can't have people coming into the jury room with preconceived notions about what should take place and wanting to convict my client just based upon what an officer says happened or what a prosecutor says happened. It needs to be on the basis of what you learn happened and how that fits into the law as you're instructed.
>
> So, does anyone else have any strong feelings about that?
>
> . . .
>
> Is there anybody that has any questions? Anything that – Mr. Dumont, no questions?
>
> VENIREMAN DUMONT: No.
>
> MR. HARTLEY: Well, you asked some good questions before. I just want to make sure that I'm not leaving anything else.

Although initially Dumont was apprehensive about understanding the case, both the State Attorney and defense counsel conducted a meaningful voir dire of Dumont to address that issue. Dumont's responses to further questioning by defense counsel indicates that he could decide the case impartially, and that he was open to hearing the facts and circumstances of the case. It is clear from the record that counsel felt Dumont could and would remain impartial. Neither counsel nor the trial judge suggested Dumont be removed for cause.

"A jury selection error justifying postconviction relief is so fundamental and glaring that it should have alerted a trial judge to intervene, even in the absence of a proper objection, to prevent an actually biased juror from serving on the jury, thereby irrevocably tainting the trial. Where reasonable people could disagree about a juror's fitness to serve, the showing of prejudice required for postconviction relief is lacking." Carratelli v. State, 915 So. 2d 1256, 1264 (Fla. 4th DCA 2005).

The record refutes any claim of actual bias that would have prevented juror Dumont from serving as an impartial juror. "[W]hen the record establishes that the allegations that support a motion for postconviction relief are untrue, then it is proper to deny the motion without a hearing." Mullins v. State, 850 So. 2d 676, 677 (Fla. 4th DCA 2003), citing Davis v. State, 257 So. 2d 79, 80 (Fla. 2d DCA 1972). Accordingly, Claim Two of Defendant's motion for Postconviction Relief is summarily denied.

Resp. Ex. L 33-37 (record citations omitted). Petitioner appealed, and the Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. P. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.

Although a juror may make initial statements during voir dire suggesting potential bias, later responses may establish that the juror can be impartial, especially when combined with appropriate court instructions to the venire. See Bell v. United States, 351 F. App'x 357, 359 (11th Cir. 2009) (per curiam) (citations omitted); United States v. Simmons, 961 F.2d 183, 186 (11th Cir. 1992). Further, trial counsel's decision not to use all the peremptory strikes

28

allotted to the defense suggests that there might have been a strategic reason for retaining the questionable juror. See Bell, 351 F. App'x at 360; Simmons, 961 F.2d at 186. "Assessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." Bell, 351 F. App'x at 360.

Upon the trial court's initial questioning, all potential jurors collectively agreed that they understood Petitioner was presumed innocent and the state had the burden of proving he committed a crime. Resp. Ex. D at 32-33. Although Dumont suggested slight confusion about the nature of the charged offenses, he clearly stated he could follow the law. Id. at 114-16. Upon questioning by trial counsel, Dumont stated that he was comfortable with the idea that the state had the obligation to present evidence meeting every element of the charged offense. Id. at 135. At the end of trial counsel's questioning, another juror, Brazzano, suggested the seriousness of the charged offense might hinder his impartiality. Id. at 143-44. Dumont then stated, "I agree with him. Nobody forced him to go on the computer." Id. at 144. In response, the trial court immediately interrupted and clarified that no evidence had yet been presented and thus any ideas about what may or may not be presented was not relevant during jury selection. Id. at 144-45. The trial court then recessed for lunch, and upon their return, trial counsel reiterated that the jury should look at the

charged offenses as "only allegations" at this point. Id. at 151. The trial court asked the panel once more if everyone could "presume [Petitioner] innocent at this time, having heard no evidence, no law, no arguments, just the charge," and they collectively responded in the affirmative. Id. at 153. Trial counsel used five of his six peremptory strikes, and Dumont was the last juror selected to sit on the final panel. Id. at 161-63. The trial court then addressed Petitioner, who explained to the trial court that trial counsel answered all of his questions during jury selection, and advised that he was satisfied with the chosen jury panel. Id. at 165.

Petitioner's approval of the jury suggests that trial counsel's presumed strategic decision not to exercise an available peremptory strike was reasonable. See Price v. Sec'y Dep't of Corr., 558 F. App'x 871, 872-73 (11th Cir. 2014) (holding that it was not unreasonable application of clearly established federal law for the Florida courts to conclude that defendant could not argue that counsel had been ineffective for failing to strike a juror that the defendant had approved).[12] As such, upon thorough review of the record and the applicable law, the Court finds that the state court's decision is neither contrary to nor an

---

[12] Although the Court does not rely on unpublished opinions as precedent, they may be cited in this Order because the Court finds their reasoning persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022). Rule 32.1 of the Federal Rules of Appellate Procedure permits the Court to cite as persuasive authority unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

unreasonable application of <u>Strickland</u> and is not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Four is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[13]

---

[13] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of June, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Michael King, #D16748
        counsel of record